UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | |
|---|---|
| DEMARCUS ROWE #415009, | ) |
| | ) |
| Plaintiff, | )   Case No. 2:08-cv-162 |
| | ) |
| v. | )   HON. ROBERT HOLMES BELL |
| | ) |
| DAVID BERGH, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 against Defendants Warden David Bergh, Corrections Officer Unknown Sego, Resident Unit Manager Denver McBurney, Sergeant Unknown Tenuta, Assistant Resident Unit Supervisor Peggy Ann Carberry, Resident Unit Officer Unknown Warzak, and Unknown Dolinski, R.N.  The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a

claim against Defendants Bergh, Sego, McBurney and Carberry. The Court will serve the complaint against Defendants Tenuta, Warzak and Dolinski with regard to his denial of medical care claims.

## Discussion

I. <u>Factual allegations</u>

Plaintiff alleges in his complaint that on September 28, 2007, Defendant Sego and Resident Unit Officer Peterson came to his cell to request a shakedown. Plaintiff stated that he had received a shakedown earlier that day and refused to allow a second shakedown. Shortly thereafter, Defendant Sego, Resident Unit Officer Peterson and Defendant Tenuta returned to Plaintiff's cell. Plaintiff explained the situation to Defendant Tenuta, who responded by telling Plaintiff to "cuff up" and come out of his cell, "or else." Plaintiff states that he believed this to be a threat and feared for his safety. Plaintiff told Defendant Tenuta that he would come out, but that he planned to write a grievance. Defendant Tenuta indicated that he did not care, because he would be the one to respond to the grievance. Plaintiff then stated that he would include Defendant Tenuta in the grievance. At this point, Defendant Tenuta became red in the face and ordered Plaintiff to cuff up and come out of his cell. In addition, Defendant Tenuta stated that he would "mess [Plaintiff] up."

Plaintiff alleges that his hands were cuffed behind his back and that Defendant Sego began to pat Plaintiff down. Defendant Tenuta instructed Plaintiff not to look at him, but Plaintiff kept staring at Defendant Tenuta. At this point, Defendant Sego placed both his hands on Plaintiff's shoulders and twisted Plaintiff's body away from Defendant Tenuta. Plaintiff turned to look at Defendant Sego and Defendant Tenuta then grabbed Plaintiff by the back of the neck and squeezed, causing Plaintiff to gag. Defendant Tenuta then pushed Plaintiff's shoulder and side of face into the metal door frame, causing him to feel pain. Plaintiff claims that he sustained several marks on his

face and a bruised and swollen right shoulder and wrist. Defendant McBurney then approached the scene and grabbed Plaintiff's head, forcing Plaintiff's head down to waist level. Defendants Tenuta and Sego then grabbed Plaintiff's cuffed arms and pulled him to the B-Wing shower.

Plaintiff alleges that on November 1, 2007, he asked Defendant Carberry for legal supplies, but she refused, stating "McBurney says you get nothing until you drop the grievances." On November 29, 2007, while waiting to go to a medical appointment, Plaintiff was placed in the A-wing shower and strip searched by Corrections Officer Tallman. During the search, Defendant Carberry told Tallman, who is female, to see if she could get Plaintiff to show her his "dick."

On December 4, 2007, Defendant Carberry refused to notarize any affidavits for Plaintiff unless he showed her his penis. Plaintiff states that each time he filed a grievance on Defendant Carberry, she lied to the interviewer, stating that she had not given Plaintiff supplies because he had been masturbating when she made rounds. On April 4, 2008, while Defendant Carberry refused to give Plaintiff legal supplies because of a ticket he had received in March.

On April 14, 2008, Plaintiff stuck his arm in the food slot of his cell and told Defendant Warzak that he was going to overdose on 100 aspirin and showed Defendant Warzak the bottle. Defendant Dolinski was making rounds at the time and asked what was going on. Plaintiff started taking the aspirin and showed Defendant Dolinski the half full bottle. Plaintiff then took the rest of the aspirin in front of Defendant Dolinski. Plaintiff subsequently sought medical attention and was told by Defendant Tenuta that he would have to remove his arm from the food slot first. Plaintiff pulled his arm out of the slot, after which Defendant Tenuta told Plaintiff that he was not "getting shit." Plaintiff then told Defendants that he needed to be taken to the hospital, but Defendant Dolinski told Plaintiff that he had not seen Plaintiff take anything. Plaintiff became sick

and dizzy and eventually began to vomit repeatedly. Plaintiff asked Corrections Officer Barnett to call the nurse and Nurse Galloway was summoned. Plaintiff did not tell Nurse Galloway about the aspirin, as he assumed she already knew that he had taken them. Nurse Galloway told Plaintiff not to eat or drink for 3 hours and ordered a liquid diet for Plaintiff. Plaintiff subsequently began to vomit blood. Plaintiff continued to vomit blood into the next day. Since this incident, Plaintiff has suffered from constant ringing in his ears, a stuffy nose, indigestion, and coughs up blood clots. Plaintiff was finally seen by the doctor on July 3, 2008. The doctor told Plaintiff that he suffered from high blood pressure and was placing him on medication which would eventually kill his liver, kidney, heart, and brain.

On April 20, 2008, Plaintiff sent a kite to Defendant McBurney complaining about Defendant Carberry's refusal to give him legal supplies. On April 24, 2008, Resident Unit Officers Bone and Wilkins spent 40 minutes shaking down Plaintiff's cell, during which Plaintiff was placed in the shower on A-wing. While Plaintiff was in the shower, Resident Unit Officer Peterson told Plaintiff that he should leave "the boss lady" alone. When Plaintiff was returned to his cell, Resident Unit Officer Bone told Plaintiff that they had been looking for evidence of something to do with Defendant Carberry. Plaintiff states that everything in his cell had been searched and that all his papers and belongings were in a mess on the floor.

On June 2, 2008, Plaintiff was moved to an isolation cell on D-wing. This cell is called the peep hole cell or the monkey cell and is used for inmates who continuously receive sexual misconduct tickets and cannot be controlled under the normal procedures. Plaintiff claims that his placement in this cell was done in order to separate him from other prisoners who might help him and that it violated his due process rights. Plaintiff also states that he was placed in isolation as a

result of his "constant litigating" and grievances directed toward the Defendants. Plaintiff alleges that on June 19, 2008, he was told by Assistant Deputy Warden Rutter that "until someone makes us or we want to let you out your [sic] in that cell." Plaintiff states that he has been gravely affected by the misconduct of Defendants and has attempted to commit suicide three times while incarcerated at LMF. Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth and Fourteenth Amendments and seeks compensatory and punitive damages, as well as injunctive relief.

II. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants Sego, Tenuta, and McBurney subjected him to excessive force in violation of the Eighth Amendment on September 28, 2007. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which,

although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id*. Taking Plaintiff's allegation as true, plaintiff's allegations are insufficient to state a claim because the alleged deprivation is not sufficiently grave.

Only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave for an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). A de minimis use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind." *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994), *cert. denied* 513 U.S. 1114 (1995) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis). Federal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the level of a constitutional violation. *Neal v. Miller*, 778 F. Supp. 378, 383-384 (W.D. Mich. 1991) (collecting cases). The same hold true even when the push or shove appears to be unnecessary. *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996). There are no extraordinary or unusual circumstances surrounding the alleged push by Denoon. Plaintiff alleges that he suffered bruises and swelling as a result of the incident. From his allegations, it is plain that any injury was de minimis. Thus, Plaintiff's allegation that Defendants pushed him against a door frame does not rise to the level of a constitutional deprivation.

Moreover, Plaintiff concedes that he was uncooperative with the request to shakedown his cell and with the initial instruction to be cuffed and come out of his cell. In addition, Plaintiff failed to comply with the instructions of Defendant Tenuta while being cuffed. The

Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Therefore, the court finds that Plaintiff's excessive force claims against Defendants Sego, Tenuta, and McBurney are properly dismissed.

Plaintiff also claims that Defendant Carberry made inappropriate sexual remarks to Plaintiff in an attempt to get him to expose himself to her. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the

unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wonton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim).

   The Eight Amendment's proscription against cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The objective component of an Eighth Amendment claim requires that the pain be serious. *Id*. at 8-9. Although severe or repetitive sexual abuse certainly could qualify under this standard, a single incident of objectionable sexual touching does not meet the objective component of an Eighth Amendment claim. Numerous circuit court decisions, including unpublished opinions of the Sixth

Circuit, have held that such allegations are insufficient to state an Eighth Amendment claim. *See, e.g.*, *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If true, Defendant Carberry's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Carberry ever touched him or had form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendant Carberry.

Plaintiff claims that he was placed in an isolation cell without justification in violation of his due process rights. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the Due Process Clause,

the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit repeatedly has found that confinement to segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (considering two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (involving inmate serving a life sentence who was placed in segregation after serving thirty days of detention for a misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Plaintiff states that he was placed in the isolation cell on June 2, 2008. The Sixth Circuit has recognized that duration alone may, in extreme circumstances, cause administrative segregation to rise to the level of an "atypical and significant"deprivation that implicates a protected liberty interest. *See Harden-Bey v. Rutter*, 524 F.3d 789 (6th Cir. 2008) (holding that allegations that a prisoner has been indefinitely confined to administrative segregation for more than three years states a procedural due process claim). Here, Plaintiff has alleged nothing approaching the length of segregation that the *Harden-Bey* court concluded was "atypical and significant" in its duration. Nor has Plaintiff alleged that the conditions under which he is being held constitute an atypical or significant hardship under *Sandin*. Consequently, the court concludes that no liberty interest is implicated by his placement.

Plaintiff claims that Defendants Carberry, McBurney and Tenuta retaliated against him by denying him legal supplies, subjecting him to harassing shakedowns and placing him in an

isolation cell. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, cannot show that the refusal to give him legal supplies on one occasion and the temporary placement in segregation were sufficiently adverse to deter a person of ordinary firmness from engaging in that conduct. Therefore, the court concludes that this claim is properly dismissed.

The court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989),

*cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Bergh was personally involved in the activity which forms the basis of his claims. Defendant Bergh's only role in this action involve the denial of administrative grievances or the failure to act. Defendant Bergh cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Bergh are properly dismissed for lack of personal involvement.

Finally, the court notes that Plaintiff's Eighth Amendment claims against Defendants Tenuta, Warzak, and Dolinski for the denial of medical care on April 14, 2008, after he swallowed a bottle of aspirin are not clearly frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Bergh, Sego, McBurney and Carberry will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Tenuta, Warzak and Dolinski with regard to his denial of medical care claims.

An Order consistent with this Opinion will be entered.


Dated: September 9, 2008                /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE